UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ANTONIO M LACY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:11-CV-330 |
| | § | |
| NORRIS JACKSON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This case is on remand from the Fifth Circuit Court of Appeals on a single issue: did defendants Warden Jackson and Sergeant D. Mayer violate the due process rights of plaintiff Antonio M. Lacy when they ordered that $200.00 be forfeited from his inmate trust fund account as punishment for a disciplinary conviction?  (See D.E. 53, December 13, 2012 Order of Remand).

Defendants' have filed a motion for summary judgment to dismiss plaintiff's claim as frivolous and requesting that the dismissal be characterized as a "strike" for purposes of 28 U.S.C. § 1915(g).  (D.E. 77).  Lacy also moves for summary judgment (D.E. 80, 81, 82), and has also filed a response in opposition to defendants' summary judgment motion.  (D.E. 84).

For the reasons stated herein, it is respectfully recommended that the Court grant defendants' summary judgment motion, deny Lacy's summary judgment motion, and dismiss Lacy's §1983 claims with prejudice.

## I. Jurisdiction.

The Court has federal question jurisdiction. 28 U.S.C. § 1331.

## II. Procedural background.

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and is currently confined at the McConnell Unit in Beeville, Texas.

### A. The habeas corpus petition.

On October 6, 2011, Lacy filed his § 2254 petition for habeas corpus relief challenging as unconstitutional an April 15, 2011 prison disciplinary conviction in which he was found guilty of making an unauthorized commodity exchange with another offender, Santos Ramirez, and of operating an unauthorized business by providing legal work to Ramirez in exchange for $200.00. (The $200.00 was deposited by Ramirez's mother into Lacy's trust account). Lacy was found guilty of the disciplinary offenses and his punishment included a verbal reprimand, 45 days of commissary and cell restriction, a reduction in time-earning status, and the subsequent forfeiture of $200.00 from his inmate trust fund account. (See D.E. 1). In his habeas petition, Lacy argued that the disciplinary conviction violated his due process rights because there was insufficient evidence to support a finding of guilty. Id. Both Lacy and Respondent moved for summary judgment (D.E. 16, 20), and on June 13, 2012, this Court granted summary judgment in favor of Respondent on Lacy's habeas corpus claims finding that there was some evidence to support the finding of guilty as to the two disciplinary offenses. (D.E. 38). The Court dismissed without prejudice Lacy's §1983 claim that the $200.00 was forfeited without due process. Id. at 8, n. 2. Lacy appealed, and by Order issued as Mandate dated

December 10, 2012, the Fifth Circuit affirmed the granting of summary judgment in favor of Respondent and dismissal of Lacy's habeas corpus claims; however, the Fifth Circuit reversed and remanded the decision "to consider only Lacy's claim regarding the infringement of his property interest without procedural due process," and identified as the proper defendants Warden Norris Jackson and Sergeant D. Mayer. (D.E. 53 at 2).

**B.     Section 1983 claim.**

On remand, pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), Lacy was assessed an initial partial filing fee to proceed with his § 1983 claims against Warden Norris Jackson and Sergeant D. Mayer (D.E. 57), and service was ordered on defendants. (D.E. 61). On February 6, 2013, Lacy filed his First Amended Complaint (D.E. 63), and on March 13, 2013, defendants filed their Answer arguing that the Eleventh Amendment bars Lacy's claims for money damages against them in their official capacities, and that they are entitled to qualified immunity on Lacy's claims against them in their individual capacities. (D.E. 64).

Following initial disclosures and discovery, on April 25, 2013, defendants filed the instant motion for summary judgment. (D.E. 77). On May 13, 2013, Lacy filed his cross-motion for summary judgment with declaration and brief in support (D.E. 80, 81, 82), and also a response in opposition to defendants' summary judgment motion (D.E. 84). On May 15, 2013, Lacy filed supplemental objections to defendants' summary judgment motion. (D.E. 85).

On June 10, 2013, defendants filed a response in opposition to Lacy's summary judgment motion. (D.E. 87).

Through this action, Lacy is seeking an injunction ordering defendants to restore the $200.00 to his inmate trust fund account, an injunction prohibiting the defendants and the TDCJ-CID from harassing or retaliating against him, $10,000.00 in compensatory damages "for the emotional injuries sustained as a result of the forfeiture," and punitive damages in the amount of $1,000.00 interest for each day the money was forfeited from his account. (D.E. 63 at 7).

### III.   Summary judgment evidence.

In support of their motion for summary judgment, defendants offer the following:[1]

| | |
|---|---|
| Ex. A: | Affidavit of Darren Mayer; |
| Ex. B: | Relevant portions of Lacy's disciplinary records from March 1, 2011 through May 30, 2011; |
| Ex. C: | Relevant portions of Lacy's grievance records from April 2011 to December 2011; |
| Ex. D: | TDCJ-CID Policy AD-3.72, "Guidelines for Handling Offender Funds, Accounts and Transactions;" and |
| Ex. E: | TDCJ Policy AD-14.62 concerning "Offender Property. |

In support of his summary judgment motion (D.E. 84), plaintiff also offers copies of the TDCJ-CID Policies AD-3.72 and AD-14.62, (D.E. 84 at 11-19 and 84-1 at 1-16; D.E. 84-1 at 37-40), as well as copies of the Offense Report, investigation, and

---

[1] Defendants' summary judgment motion (D.E. 77) is referred to herein as "DSJ" followed by an exhibit letter and exhibit page number. Please note that defendants mistakenly reversed the exhibit labels on Exhibits D and E; however, as noted below, Exhibit D is a copy of AD-03.72, and Exhibit E is a copy of AD-14.62.

disciplinary decision (D.E. 84-1 at 17-31), and his Step 1 and Step grievances complaining of the $200.00 forfeiture. (D.E. 84-1 at 32-35).[2]

The summary judgment evidence establishes the following:

On March 10, 2011, Sergeant Mayer brought a document titled "Order," allegedly entered in the United States District Court, Southern District of Texas, Corpus Christi Division, and signed by a federal judge identified as Douglas L. Jones, to the McConnell Unit law library to verify its authenticity.[3] (DSJ Ex. B at 19). The document was transmitted to the U.S. Attorney's office on March 24, 2011, and on March 25, 2011, an assistant U.S. attorney, Ken Cusick, contacted the McConnell Unit law librarian, Candace Moore, and related that the document was a fraudulent order. Id.

Following an investigation, by Offense Report dated April 12, 2011, Sergeant Mayer charged Lacy with a Level 3, Code 15.0 disciplinary offense of Trafficking and Trading, and a Level 3, Code 15.1 disciplinary offense of establishing or operating an unauthorized business. (DSJ Ex. B at 9-23). Sergeant Mayer alleged that Lacy provided legal services to Offender Ramirez in exchange for $200.00, and noted that neither offender had obtained permission or notified the Safe Prison Program ("SPP") coordinator to conduct this transaction. Id. Sergeant Mayer interviewed Offender Ramirez who admitted paying Lacy via a third party check from his mother, Andrea Ramirez. Id. at 9, 11. A correctional officer, Officer Shields, admitted that he had typed

---

[2] Lacy and defendants rely on the same evidence. Reference will be to defendants' exhibits for the sake of convenience.

[3] A copy of the fraudulent Order is included in the investigation and is found at DSJ Ex. B at 22-23. The "Order" purports to sustain Offender Ramirez' objections in a federal habeas action.

the "Order" upon Lacy's request. Id. at 11, 17. Lacy's inmate trust fund account reflected that on October 29, 2010, he had received a $200.00 deposit from A. Ramirez. Id. at 13.

On April 15, 2011, a disciplinary hearing was held on the two charges against Lacy. (DSJ Ex. B at 3). Lacy was represented by Counsel Substitute ("C.S.") D. Bryant, and pled not guilty to the charges. Lacy denied running a business and noted that anybody could put money in his account. Id. at 4. Lacy also denied knowing that Ramirez had "put money on my books," but also claimed to have paid Ramirez back the money in commissary purchases. Id. Captain J.C. Gonzales presided as the Disciplinary Hearing Officer ("DHO"). Id. The DHO found Lacy guilty as charged, and as punishment he received a verbal reprimand, loss of 45 days recreation and commissary, and a reduction in his time earning class. Id.

On June 20, 2011, Lacy received a copy of his inmate trust fund account statement. (DSJ Ex. C at 3, 8). According to the statement, on May 24, 2011, $200.00 had been taken from his account with the description of the transaction as "forfeiture." Id. at 8. On that same date, Lacy filed a Step 1 grievance, Grievance No. 2011182625, pointing out that the DHO had not ordered a forfeiture of any monies at the disciplinary hearing and he charged that Warden Jackson and Sergeant Mayer had wrongfully accessed the forfeiture and taken his funds in violation of his due process rights. (DSJ Ex. C at 3;[4] D.E. 84-1 at 32-33). Lacy requested that the $200.00 be returned to his

---

[4] Defendants' evidence does not include page 2 of Lacy's June 20, 2011 Step 1 grievance.

account. (D.E. 84-1 at 33). By response dated August 2, 2011, the Law Librarian Candace Moore denied the grievance stating: "Investigation has revealed that the money was confiscated due to you being found guilty of trafficking and trading." Id. at 33. Plaintiff filed a Step 2 appeal of this grievance, and it was denied. (DSJ Ex. C at 4-5).[5]

On October 6, 2011, Lacy filed this action challenging the April 15, 2011 disciplinary conviction for trafficking and trading. (D.E. 1). He alleged that the DHO abused his discretion in finding him guilty, and also, that the TDCJ-CID "improperly removed $200.00 from [Lacy's] inmate trust fund account." (D.E. 1 at 6).

On June 13, 2012, the Court denied Lacy's habeas corpus claims and dismissed without prejudice his §1983 claims challenging as unconstitutional the forfeiture of $200.00. (D.E. 32, 38, 39).

Following appeal, the Fifth Circuit remanded Lacy's § 1983 forfeiture claim. (D.E. 53).

On February 6, 2013, Lacy filed his first amended complaint. (D.E. 63). Lacy complains that, while prison officials were investigating the facts behind the generation of the fraudulent court order, but before the offense report was filed or the disciplinary hearing was held, Sergeant Mayer placed a " hold" on Lacy's inmate trust fund account. (D.E. 63 at 4). He claims also that, following his disciplinary conviction, Sergeant Mayer

---

[5] In his summary judgment response, D.E. 84, Lacy offers copies of an earlier Step 1 grievance, Grievance No. 2011130418, and the Step 2 appeal, alleging that he was being harassed by Sergeant Mayer and Officer Daughtrey and that they illegally confiscated his law books and legal materials. (D.E. 84-1 at 23-24, 21-22). However, Lacy did not raise a retaliation claim in his amended complaint (D.E. 63), nor did the Fifth Circuit remand this action for consideration of any matter beyond the forfeiture of the $200.00. Thus, to the extent Lacy is attempting to raise claims of retaliation or denial of access to the courts, it is respectfully recommended those claims be dismissed without prejudice.

and Warden Jackson forfeited $200.00 from his account on May 11, 2011, although no forfeiture was ordered by the DHO. Lacy contends that defendants' forfeiture of the $200.00 violates TDCJ-CID's own policies and procedures, and also, amounts to a taking of his personal property without due process in violation of his constitutional rights.

## IV.    Summary judgment standard.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. Id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider

hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." Anderson, 477 U.S. at 250-51.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. See Milchalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. Id. Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. Bazen v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001).

## V. Discussion.

Plaintiff is suing Warden Jackson and Sergeant Mayer for monetary damages and injunctive relief in their official and individual capacities.

### A. Eleventh Amendment bars monetary claims.

Defendants move for summary judgment to dismiss plaintiff's claims for monetary damages against them in their official capacities as barred by the Eleventh Amendment.

The Eleventh Amendment bars a suit for money damages against a state or state agency. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996). An action by a citizen against a state official in his or her official capacity is, in actuality, an action against the State itself, and is therefore barred by the Eleventh Amendment.[6] Kentucky v. Graham, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity to TDCJ-CID officers and officials acting in their official capacities. See Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities); Augilar v. TDCJ, 160 F.3d 1052, 1054 (5th Cir. 1998) (same). Thus, to the extent Lacy is suing defendants Warden Jackson and Sergeant Mayer in their official capacities for money damages, those claims are barred by the Eleventh Amendment. As such, it is respectfully recommended that defendants' motion for summary judgment to dismiss plaintiff's claims against them in their official capacities be granted.

---

[6] The limited exception to this Eleventh Amendment bar is an action seeking prospective injunctive relief against a state officer for an ongoing constitutional violation. Ex parte Young, 209 U.S. 123 (1908).

### B. Qualified immunity.

Defendants move for summary judgment to dismiss plaintiff's claims against them in their individual capacities arguing that there is no genuine issue of a material fact that they are entitled to qualified immunity to defeat those claims.

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). To discharge this burden, the plaintiff must satisfy a two-prong test." Atteberry v .Nocana Gen. Hosp., 430 F.3d 245, 251-52 (5th Cir. 2005). First he must claim that the defendants committed a constitutional violation under current law. Id. (citation omitted). Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of. Id.

While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. Pearson, 555 U.S. at 236 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

**Step 1 – Constitutional violation.**

Lacy argues that defendants violated his due process rights when they caused $200.00 to be forfeited from his inmate trust fund account as punishment for his disciplinary convictions, pointing out that the DHO did not order that any monies be forfeited when he accessed punishment at the April 15, 2011 disciplinary hearing. In addition, relying on Teague v. Quarterman, 482 F.3d 769 (5th Cir. 2007), Lacy contends that the DHO erred in finding him guilty because there was no evidence presented that Lacy knew Ramirez's mother had deposited money into his account.

*Due process claim.*

It is well-established that an inmate has a property interest in his inmate trust fund account and is entitled to due process concerning the disciplinary measures imposed to deprive him of the funds. See Rosin v. Thaler, 417 Fed. Appx. 432, 434 (5th Cir. 2011) ("A prisoner has a protected property interest in the funds in his prison account." (citations omitted); see also Abdullah v. State, 211 S.W.3d 938, 943 (Tex. App. – Texarkana 2007) ("A prison inmate has a property interest in his inmate trust account.") (citations omitted). The due process rights of prisoners are not absolute, however, because the legitimate security needs of a corrections institution must be accommodated. See Bell v. Wolfish, 441 U.S. 520, 554 (1979). Accordingly, the courts should defer to prison administrators' adoption and implementation of policies needed to ensure order and security. Pell v. Procunier, 417 U.S. 817, 827 (1974).

Defendants maintain that plaintiff received all the due process protections to which he was entitled concerning the forfeiture of the funds. Administrative Directive

("AD") 14.62 sets forth the guidelines for handling offender funds, accounts, and transactions. (DSJ Ex. E at 3). Section IV, entitled "Place Hold," authorizes prison officials to freeze, all or any portion of, an account pending investigation of alleged violation of agency policy laws or misconduct involving or affecting the account. (DSJ Ex. E, AD 14.62 at § IV.B.1). Thus, to the extent Lacy complains that Sergeant Mayer placed a hold on his account prior to his being charged with any disciplinary offenses or found guilty thereof, he fails to state a claim because TDCJ-CID policy expressly permits such an action with no advance notice to the prisoner. Indeed, the policy addresses a valid security concern to avoid debts between inmates and monitor/police possible extortion, and it provides an opportunity for prison officials to investigate a matter without notice to the inmate while an investigation is conducted. Lacy's objection to Sergeant Mayer's hold on his account fails to state a cognizable due process claim.

Plaintiff also objects to the forfeiture based on the fact that the DHO did not order the forfeiture of funds as punishment at his April 15, 2011 disciplinary hearing, but instead, it was executed at a later date without notice or an opportunity for Lacy to object. Defendants maintain that Lacy had prior notice that funds determined to be a violation of the TDCJ-CID's Trafficking and Trading Rules would be forfeited by virtue of certain provisions of AD-14.62.

Section II of AD-14.62 addresses deposits. (DSJ Ex. E at 3-4). In particular, AD-14.62 § II.C provides:

> In general, offenders may not receive gifts or fees from other offenders. A deposit from one (1) offender to another may be made only by transfer from one (1) ITF [inmate trust fund]

>account to another and must have unit administrative approval. Deposits from one offender to another, processed through an outside person or bank, will be considered a violation of the Agency "Trafficking and Trading Rules" whether accepted for deposit or received by the ITF Department. Suspected violators will result in an investigation and confirmed violations may result in disciplinary action against one or both offenders to include forfeiture of funds.

(DSJ Ex. E at 4).

Pursuant to § II.C, all TDCJ-CID inmates are on notice that, if they participate in prohibited trafficking and trading, the funds involved may be forfeited. Nothing in the TDCJ-CID policy requires that the forfeiture be ordered on the same date as the disciplinary hearing or in conjunction with the disciplinary hearing on the underlying trafficking/trading offense.

In Reeves v. Pettcox, 19 F.3d 1060 (5th Cir. 1994) (per curiam), the Fifth Circuit examined whether due process dictates that prison officials give an inmate individual notice of all possible collateral consequences of a prison rule infraction when giving notice of or sentencing for a charged offense. Id. at 1061. In that case, Reeves was disciplined for placing his food tray in the "run" outside of his cell. Although putting the food tray in the run was a violation of written prison policy, Reeves argued that he had never been given notice of the policy. The Fifth Circuit found the credible evidence established that Reeves could not have known that his conduct was prohibited before he was charged with a disciplinary offense, and that it was a violation of his due process rights to punish him for an act he did not know was prohibited. Id. Conversely, in this case, Lacy does not suggest that he was unaware of the trafficking/trading prohibition.

Rather, his objection is that the funds were forfeited after the disciplinary hearing on May 24, 2011. (DSJ Ex. C at 8). However, he was advised in writing of the charges against him on April 13, 2011. (DSJ Ex. B at 3). Thus, he had notice at that time that punishment could include the forfeiture of funds. Moreover, Lacy attended the disciplinary hearing and had the opportunity to make a statement, and he was represented by counsel substitute. (DSJ Ex. A). Although the DHO did not order the forfeiture on April 15, 2011, Lacy offers no authority to equate a delay in punishment as a lack of notice, nor is there any policy stating that punishments for a disciplinary offense are limited to only those set forth by the DHO at the hearing, and AD-14.62 § II.B specifically allows for the forfeiture.

Plaintiff also contends that defendants violated TDCJ-CID policies and procedures, in particular, AD-03.72, when they forfeited the $200.00 on May 24, 2011. (D.E. 63 at 4). AD-03.72 sets forth the TDCJ-CID's policies on Offender Property. Section I.11 specifies that a prisoner's Trust Fund Account is considered authorized property of an inmate, and as such, deprivation of such property is entitled to due process. (DSJ Ex. D at 6). However, as discussed above, AD-14.62 is sufficient notice to prisoners that funds can be forfeited if there is a trafficking/trading offense. Moreover, even if plaintiff could establish that either Warden Jackson or Sergeant Mayer failed to follow a TDCJ-CID policy or procedure, such an allegation, without more, does not state a cognizable constitutional violation. See Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996).

*The <u>Teague</u> decision.*

Lacy argues that the decision in <u>Teague v. Quarterman</u>, 482 F.3d 769 (5th Cir. 2007) establishes that his due process rights were violated. Similar to Lacy's case, in <u>Teague</u>, the prisoner/petitioner was found guilty of violating the TDCJ-CID's anti-trafficking and trading policies based on the finding that another prisoner had caused to be deposited $225 into Teague's inmate account. <u>Id.</u> at 771. Teague was given written notice of the charges against him, and at Teague's disciplinary hearing, the DHO considered the charging officer's report, the transaction records of Teague's inmate account, and a copy of the cashier's check were offered into evidence. <u>Id.</u> at 772. The Fifth Circuit found the evidence considered by the DHO to be insufficient to support a finding of guilty because there was no evidence that Teague had knowledge of the funds being deposited into his account or other evidence that he participated in the prohibited trafficking. <u>Id.</u> at 780.

The <u>Teague</u> decision does not assist Lacy. First, to the extent Lacy is attempting to challenge the finding of guilty, those claims are in the nature of habeas corpus and this Court, as well as the Fifth Circuit, concluded that the there was sufficient evidence to support the DHO's finding of guilty. Indeed in this case, Offender Ramirez admitted in a written statement that he employed Lacy to perform legal work and arranged for his mother to deposit $200.00 into Lacy's account as payment. (DSJ Ex. B at 18). In addition, Officer Shields admitted typing the falsified Order upon Lacy's request. <u>Id.</u> at 17. The bulk of plaintiff's summary judgment is an attempt to challenge the DHO's finding of guilty, an issue that has been resolved and is not before this Court.

Second, the Teague decision, a habeas corpus case holding that prisoners have a property interest in their good time credits, does not suggest that the forfeiture of funds requires separate notice and a hearing apart from the disciplinary action. Thus, Teague does not assist Lacy in his § 1983 due process claim.

The summary judgment evidence establishes that Lacy was aware of prison policy prohibiting the trafficking and trading of services for money, and he knowingly violated this policy, subjecting himself to forfeiture of the funds involved. (DSJ Ex. E, AD-14.62 § II.C). The fact that the forfeiture was not ordered by the DHO at the April 15, 2011 disciplinary hearing does not equate with a denial of due process, and Lacy fails to state a cognizable constitutional violation.

### *Step 2 – Objective reasonableness.*

Moreover, even if Lacy could establish that defendants were required to give additional notice concerning the forfeiture of the funds beyond the offense report, hearing, and the provisions of AD-14.62, there is no evidence that either defendant believed additional notice was necessary and then deliberately refused to provide it for the purpose of violating Lacy's due process rights.

At the second step of the due process analysis, a plaintiff must articulate the asserted constitutional right more specifically. Thompson v. Upshur County, Tex., 245 F.3d 447, 460 (5th Cir. 2001). Thus, "when the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have known that the alleged acts of the defendant violated the United States Constitution." Id. (citation omitted). For a right to be clearly

established under the second step of the qualified immunity analysis, "[t]he contours of the right must be sufficiently clear that a reasonable officer would understand what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Under the second step, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. Even officers who interpret the law mistakenly but reasonably are entitled to immunity. Creighton, 483 U.S. at 641. The purpose of the "clearly established law" requirement is to avoid retroactive application of "newly created legal standards" to state actors who had no reason to know they were exposing themselves to liability. Mouille v. City of Live Oak, Tex., 977 F.2d 924, 928 (5th Cir. 1992).

Sergeant Mayer testifies that: "[a]ll TDCJ Policies involving this investigation were followed, and at no time was TDCJ policy violated in seeking a forfeiture of funds. It was clear [from the investigation detailed in the paragraphs above] that Offender Lacy violated TDCJ policy in conducting the legal work for personal gain." (DSJ Ex. A, Mayer Aff't at ¶ 7). Lacy offers no evidence to suggest that the actions of Warden Jackson or Sergeant Mayer were not objectively reasonable. There is no TDCJ-CID policy requiring that all punishments accessed for a violation be listed on the DHO report, or that the failure to list a punishment at the time of the hearing prevents the TDCJ-CID from forfeiting funds a month later. Indeed, TDCJ-CID notifies offenders of the punishment of forfeiture, and the undisputed facts of this case establish that plaintiff received notice of the charges against him and opportunity to answer those charges. A

reasonable officer in the situation of defendants would have acted the same. Thus, defendants are entitled to qualified immunity.

## VI. Recommendation.

The summary judgment evidence establishes that Lacy received all the due process protections to which he was entitled concerning the forfeiture of the $200.00, and even if did not, defendants' action were objectively reasonable such that they are entitled to qualified immunity. Thus, it is respectfully recommended that defendants' motion for summary judgment (D.E. 77) be granted, that Lacy's cross motion be denied (D.E. 80), and that Lacy's claims be dismissed with prejudice.[7]

Respectfully submitted this 7th day of August, 2013.

                                                                            B. JANICE ELLINGTON
                                                                            UNITED STATES MAGISTRATE JUDGE

---

[7] Defendants requested that Lacy's complaint be dismissed as frivolous and be counted as a strike for purposes of 28 U.S.C. §1915(g). Such a dismissal is not warranted as the Fifth Circuit characterized Lacy's § 1983 due process claim as stating a cause of action.

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).